UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MONROE STAFFING SERVICES, LLC, et al.,

        Plaintiffs,

  -against-

PAMELA D. WHITAKER,

        Defendant.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 03/08/2022

20-CV-1716 (GBD) (BCM)

**OPINION AND ORDER**

**BARBARA MOSES, United States Magistrate Judge.**

      The parties to this action have filed dueling lawsuits arising out of the Share Purchase Agreement (SPA) by which Pamela Whitaker (Whitaker or the Seller) sold her staffing agency, Key Resources, Inc. (KRI) to Monroe Staffing Services, LLC (Monroe), backed by a guarantee from its parent Staffing 360 Solutions, Inc. (Staffing 360; collectively, with Monroe, the Buyers). In this action, filed on February 26, 2020, the Buyers, as plaintiffs, allege that Whitaker breached various representations and warranties made in the SPA and seek $6 million in damages. In an earlier-filed action commenced in a North Carolina state court on December 5, 2019 (the North Carolina Action), Whitaker, as plaintiff, alleges that the Buyers failed to make two post-closing payments and seeks approximately $4 million in damages, as well as declaratory relief.

      In the more than two years since both actions were filed, neither has advanced beyond the pleading stage. Instead, the parties have filed dueling motions to determine where their dispute should be litigated. In the North Carolina Action, the Buyers removed the case to the United States District Court for the Middle District of North Carolina (MDNC) and moved to dismiss it pursuant to, *inter alia*, Rules 12(b)(2) and 12(b)(3) of the Federal Rules of Civil Procedure, or, in the alternative, to transfer the case to the Southern District of New York (SDNY), relying on § 8.08 of the SPA, which is a forum selection cause generally providing that any suit "arising out of or related to" the SPA "may be instituted" in the federal or state courts located in New York

County, New York, and that "each party irrevocably submits to the exclusive jurisdiction of such courts." Whitaker opposed the motion and cross-moved to remand her case to state court, also relying on § 8.08, which contains a carve-out permitting the Seller to sue in the federal or state courts located in Guilford County, North Carolina, if the suit arises out of or relates to a "Buyer setoff" (the Buyer Setoff Carve-out) and providing that where the Buyer Setoff Carve-out applies, "such forum selection by Seller shall be controlling." *Id.* Both motions turned on whether Whitaker's claims arise out of or relate to a "Buyer setoff," as that term is used in the SPA, and thus whether her choice of forum controls where the litigation would proceed.

On February 19, 2021, the presiding District Judge in the MDNC ruled in Whitaker's favor, noting the "broad language" used in the Buyer Setoff Carve-out and holding that "the dispute at issue sufficiently relates to a setoff to trigger jurisdiction in [a] North Carolina state or federal court." *Whitaker v. Monroe Staffing Servs., LLC*, 2021 WL 663716, at *2 (M.D.N.C. Feb. 19, 2021). Consequently, the District Judge denied the Buyers' transfer motion and granted Whitaker's motion to remand the case to the state court. That decision is now pending on appeal before the United States Court of Appeals for the Fourth Circuit.

Meanwhile, in this District, Whitaker filed – and I now have before me – a motion to dismiss the Buyers' Amended Complaint pursuant to Rule 12(b)(2) and 12(b)(3) or, in the alternative, to stay this action pending a decision by the Fourth Circuit and/or disposition of the North Carolina Action in its entirety. Whitaker argues that this action – like the North Carolina Action – arises out of or relates to a Buyer setoff, as that term is used in the SPA, and therefore that her choice of forum controls. She further contends that because both actions involve the same parties and arise out of the same contract, the first-filed rule independently requires that this action be dismissed or stayed in favor of the North Carolina Action.

2

Although both sides devote considerable energy to those questions, the initial inquiry, in a case such as this, is not where the case should proceed; it is "*which court* should grapple with the issue of where the case should proceed." *MSK Ins., Ltd. v. Emps. Reins. Corp.*, 212 F. Supp. 2d 266, 267 (S.D.N.Y. 2002) (emphasis in the original). In this District, the answer is clear: "The court before which the first-filed action was brought determines which forum will hear the case." *Id.*; *see also Reliance Ins. Co. v. Six Star, Inc.*, 155 F. Supp. 2d 49, 54 n.2 (S.D.N.Y. 2001) ("The court in which the first-filed case was brought decides whether the first-filed rule or an exception to the first-filed rule applies."). This is a "bright-line rule," *MSK*, 212 F. Supp. 2d at 267, which does not provide for any "special exceptions," *Pem Am., Inc. v. Lambert*, 2003 WL 22383369, at *1-3 (S.D.N.Y. Oct. 17, 2003), and counsels the court in which the second-filed action was brought to "refrain[] from ruling pending a determination by the court of first-filing." *Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 556 n.4 (S.D.N.Y. 2000). Consequently, rather than reach the merits of Whitaker's motion to dismiss, I will grant her alternative motion to stay this action in its entirety (including the motion to dismiss) pending the outcome of the appeal now before the Fourth Circuit.[1]

**I.     BACKGROUND**

   **A.     Pre-Litigation Events**

Whitaker is a resident of Winston-Salem, North Carolina. Am. Compl. (Dkt. No. 40) ¶ 8. Monroe is a Delaware limited liability company with its principal place of business in Shelton,

---

[1] Motions to stay proceedings are non-dispositive and "therefore within a Magistrate Judge's purview to decide without issuing a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b)." *Chen-Oster v. Goldman, Sachs & Co.*, 449 F. Supp. 3d 216, 227 n.1 (S.D.N.Y. 2020), *objections overruled*, 2021 WL 4199912 (S.D.N.Y. Sept. 15, 2021); *accord Margrabe v. Sexter & Warmflash, P.C.*, 2009 WL 361830, at *3 (S.D.N.Y. Feb. 11, 2009), *aff'd,* 353 Fed. App'x 547 (2d Cir. 2009).

Connecticut. *Id.* ¶ 6. Monroe is wholly-owned by Staffing 360, which is a Delaware corporation with its principal place of business in New York, New York. *Id.* ¶¶ 7, 22.

Pursuant to the SPA, executed on or about August 27, 2018, Whitaker sold 100% of the issued and outstanding stock of KRI to Monroe for a total of approximately $12 million, with approximately $8.1 million due on the closing date and two Earnout Payments, of approximately $2 million apiece, due on the first and second anniversaries of the closing. Am. Compl. ¶¶ 51-53; SPA (Am. Compl. Ex. A) §§ 1.01-1.04. Staffing 360 signed the SPA to guarantee certain of Monroe's payment obligations, including the Earnout Payments, and is entitled to assert all of Monroe's "rights, remedies, and defenses" under the SPA. Am. Compl. ¶¶ 55-56; SPA § 1.05.

The SPA contains numerous representations and warranties by the Seller. SPA §§ 3.01-3.22. It also contains a series of indemnification provisions, *id.* §§ 7.01-7.07, and a setoff clause that permits Monroe (identified as the Buyer in the SPA) to "withhold and deduct from any Earnout Payments," at its "sole election," any sum that it believed in good faith "may be owed to it" pursuant to the indemnification provisions. *Id.* § 7.08. To exercise its setoff right, the Buyer must deliver a written notice specifying the basis for the setoff, calculating the amount, and supporting the calculation with "reasonable documentation." *Id.*

The contract is governed by New York law, *see* SPA § 8.08, and contains the following forum selection clause:

> Any legal suit, action, proceeding, or dispute arising out of or related to this Agreement . . . may be instituted in the federal courts of the United States of America or the courts of the State of New York in each case located in the city and county of New York, and each party irrevocably submits to the exclusive jurisdiction of such courts . . . . Notwithstanding the foregoing, any legal suit, action, proceeding, or dispute arising out of or relating to a Buyer setoff pursuant to Section 7.08 and Seller's dispute relating thereto may be instituted in the federal courts of the United States of America located in the Middle District of North Carolina or the courts of the State of North Carolina located in Guilford

> County, in either case applying New York law, and such form selection by Seller shall be controlling.

Am. Compl. ¶ 83; SPA § 8.08.

Monroe tendered the $8.1 million due at closing as required. Am. Compl. ¶ 78. Thereafter, on September 11, 2019, the parties executed an Amendment Agreement extending the deadlines for both Earnout Payments to February 27, 2020. *Id.* ¶ 81; Am. Ag. (Am. Compl. Ex. B) §§ 2(a)-(c). However, the Buyers were required to make $10,000 monthly interest payments with respect to the first Earnout Payment from September 30, 2019, until that Earnout Payment was paid in full. Am. Ag. § 2(b). The forum selection clause contained in § 8.08 of the SPA was expressly carried over into the Amendment Agreement. *Id.* § 3.

Also in September 2019, Staffing 360 audited its business units, including KRI. Am. Compl. ¶ 85. This audit allegedly revealed numerous violations of federal and state law by KRI, particularly with regard to its hiring and retention practices and its compliance with immigration-related verification and documentation requirements. *Id.* ¶¶ 85-87. On November 25, 2019, the Buyers wrote to Whitaker, stating that her representations and warranties "may have been false" and that if she knew of the falsity when she executed the SPA, her conduct "clearly 'involv[ed] fraud' within the meaning of Section 7.09" of the SPA. *Id.* ¶ 88; Blackwell Decl. (Dkt. No. 45) Ex. 2 (November 25 Notice), at 1-2 (alteration in the original). The Buyers advised Whitaker that they had potential claims against her under numerous provisions of the SPA, and expressly provided her with "notice, pursuant to Section 7.08 of the SPA, that Staffing 360 reserves all rights to setoff any penalties, liabilities, or damages arising as a result of any fraudulent conduct and/or breaches of the SPA . . . against any Earnout Payments that would otherwise be owed to you." November 25 Notice at 2. However, according to the Buyers, they continued to pay the

required monthly interest with respect to the first Earnout Payment up to and including January 2020. Am. Compl. ¶ 82.

B.  **The First-Filed Case**

On December 5, 2019, Whitaker initiated the North Carolina Action by filing an 11-paragragh complaint in the Guilford County, North Carolina Superior Court (the State Court), naming the Buyers as defendants. Whitaker Decl. (Dkt. No. 44) ¶ 24. In her complaint, Whitaker alleged (without expressly mentioning SPA § 8.08) that venue was appropriate in Guilford County because her claim "involves a dispute relating to a potential buyer setoff." State Ct. Compl. (Whitaker Decl. Ex. C) ¶ 5. She then alleged that the Buyers breached the SPA, as amended, "by failing to make the [Earnout] [P]ayments and interest as agreed," damaging Whitaker in the sum of over $4 million plus interest. *Id.* ¶ 9. She also sought a declaration "construing the rights and obligations of the parties." *Id.* ¶ 11.

On January 7, 2020, the Buyers removed the North Carolina Action to the MDNC on diversity grounds, Whitaker Decl. ¶ 26, and on January 14, 2020 – relying upon the New York forum selection language in first half of SPA § 8.08 – they moved to dismiss the case for, *inter alia*, lack of personal jurisdiction over Staffing 360 and improper venue, or, in the alternative, to transfer the case to this District. *See* Blackwell Decl. Ex. 3, at 2-3. On February 4, 2020 – relying upon the North Carolina forum selection language in the second half of SPA § 8.08 – Whitaker cross-moved to remand the North Carolina Action to State Court. Blackwell Decl. Ex. 3, at 2.

C.  **The Second-Filed Case**

On February 26, 2020 (the day before the Earnout Payments were due), the Buyers wrote to Whitaker, "advising her that the suspicions set forth in [their] November 25 Notice were confirmed and that they were electing to exercise their rights to terminate the [SPA] and sue for breach of the [SPA] and fraudulent inducement." Compl. (Dkt. No. 1) ¶ 86. That same day, they

6

filed this action in the SDNY, alleging that Whitaker fraudulently induced them to enter into the SPA and breached various representations and warranties contained therein. *Id.* ¶¶ 1, 87-99. Subject matter jurisdiction was premised on diversity of citizenship. *Id.* ¶ 9. Personal jurisdiction and venue were based on the New York forum selection language in the first half of SPA § 8.08. *Id.* ¶¶ 9-10. The Buyers did not use the word "setoff" in their pleading. However, they sought damages of "no less than $6 million," *id.* ¶¶ 92, 99, which exceeds the approximately $4 million in Earnout Payments that had been due to Whitaker the next day.

D.      **Dueling Motions**

On February 28, 2020 (the day after the Earnout Payments were due), Whitaker moved in the MDNC for leave to amend her pleading. Whitaker Decl. ¶ 27. Her proposed amended complaint alleges that venue is "required" in the State Court "because this lawsuit involves a dispute relating to a buyer setoff claim." Prop. Am. MDNC Compl. (Whitaker Decl. Ex. D) ¶ 5. It also alleges that the Buyers "asserted in conversations" that they had "a valid setoff claim and the right to withhold the Earnout Payments based on this claim," *id.* ¶ 13, and that they did in fact withhold the Earnout Payments, in the amount of approximately $4 million, when they "purported to terminate the [SPA]." *Id.* ¶ 14.

On April 28, 2020, Whitaker moved in this Court to dismiss the Buyers' Complaint pursuant to Rules 12(b)(2), 12(b)(3), and 12(b)(6). Relying upon the North Carolina forum selection language in the second half of SPA § 8.08, she argued that the Buyers' claims here (like her previously filed claims in North Carolina) relate to a "Buyer setoff," as that term is used in § 8.08, and therefore that venue is improper in this Court. *See* Whitaker First MTD Mem. (Dkt. No. 16) at 1, 7-11. Further, she argued, dismissal was required under the first-filed rule even if venue would otherwise be proper in this District. *See id.* at 1, 11-14. She added that, in the absence of a binding New York forum selection clause, this Court lacks personal jurisdiction

over her. *Id*. at 1, 14-19. Finally, Whitaker urged, the Complaint should be dismissed for failure to state a cognizable claim for fraudulent inducement or breach of contract. *Id*. at 19-25.

On June 25, 2020, in the MDNC, the Hon. Joel L. Webster, United States Magistrate Judge, issued a Memorandum Opinion and Recommendation that the Buyers' motion be granted, insofar as they sought transfer of the North Carolina Action to this Court, and that Whitaker's remand motion be denied. Blackwell Decl. Ex. 3.

On October 13, 2020, in this Court, the Hon. George B. Daniels, United States District Judge, heard argument on Whitaker's motion to dismiss the Buyer's initial Complaint. Noting that the same questions of venue and jurisdiction were the subject of motion practice in the MDNC (where they had already been addressed by Magistrate Judge Webster), Judge Daniels asked, "Why is it more appropriate for me to determine for the North Carolina court what jurisdiction they have over the case? Isn't it the North Carolina court that decides what jurisdiction they have . . . ?" Tr. of Oct. 13, 2020 Oral Arg. (Tr.) (Dkt. No. 30) at 7:10-13; *see also id.* at 14:13-16 ("[W]hy is that a decision for me to make when it is already an issue before the North Carolina court[?]"). At the conclusion of the hearing, Judge Daniels denied the motion to dismiss, to the extent it was made on "procedural" grounds, "without prejudice," noting that the MDNC was "in the process of making that decision" and anticipating that this Court would "respect that decision when it comes down." *Id.* at 83:11-16. As to the "substantive motion," Judge Daniels dismissed the Complaint as inadequately pleaded but granted leave to amend. *Id.* at 84:9-87:6; Order dated Oct. 13, 2020 (Dkt. No. 28).

One day later, in the MDNC, the Hon. N. Carlton Tilley, Jr., United States District Judge, disagreed with Magistrate Judge Webster's recommendation, denied the Buyers' motion to transfer the North Carolina Action to this Court, and instead granted Whitaker's motion to

8

remand the case to State Court. *Whitaker v. Monroe Staffing Servs.*, 2021 WL 663716, at *4. Judge Tilley reasoned that the language of the Buyer setoff carve-out in § 8.08 is "expansive" and "broad," covering any dispute arising out of or "relating to" a setoff claim by the Buyers, and therefore that Whitaker was entitled to invoke the carve-out and elect to litigate in the State Court even though the Buyers had not "formally made a setoff claim or invoked it as a defense." *Id.* at *3. It was enough, in Judge Tilley's view, that the Buyers had reserved their "right to setoff as a result of any fraudulent conduct or breach by her," thereafter (i) refused to make all or part of the Earnout Payments, and (ii) sued her (in this District) for breach of contract and fraudulent inducement. *Id.* "In this context, any amount [the Buyers] have not paid Ms. Whitaker as a result of a conclusion, position, or assertion – right or wrong – that Ms. Whitaker committed fraud or breached the terms of the contract would 'relat[e] to' a setoff – a legal justification for not paying that amount." *Id.* Moreover, he reasoned, since § 8.08 expressly made Whitaker's initial choice of a state court forum "controlling," the SPA "trump[ed] what would otherwise be [the Buyers'] right to move cases to federal court." *Id.* (quoting *Yakin v. Tyler Hill Corp.*, 566 F.3d 72, 76 (2d Cir. 2009)).[2]

On February 25, 2021, the Buyers appealed Judge Tilley's decision to the Fourth Circuit. Blackwell Decl. Ex. 6. As of the date of this Opinion and Order, that appeal remains pending and undecided. On March 12, 2021, in this Court, the Buyers filed their Amended Complaint, which asserts a single claim against Whitaker for breach of the warranties and representations set forth in the SPA, Am. Compl. ¶¶ 155-61, and seeks over $6 million in damages. *Id.* at 36. As before, subject-matter jurisdiction is based on diversity of citizenship, while personal jurisdiction over

---

[2] Judge Tilley did not rule on the Buyers' motion to dismiss the North Carolina Action or Whitaker's motion to amend her complaint, leaving those motions for the State Court to determine. *Whitaker v. Monroe Staffing Servs.*, 2021 WL 663716, at *4.

9

Whitaker and venue in this District are premised on the New York forum selection language in the first half of SPA § 8.08. *Id.* ¶¶ 9-10.

### E. The Pending Motion

On April 9, 2021, in this Court, Whitaker moved again to dismiss the case pursuant to Rules 12(b)(2) and 12(b)(3), for lack of personal jurisdiction and improper venue. (Dkt. No. 43.) In the alternative, she seeks an order staying this action pending "either a decision by the Fourth Circuit or disposition of the North Carolina Action in its entirety." Whittaker Second MTD Mem. (Dkt. No. 46) at 20. Relying upon the North Carolina forum selection language in the second half of SPA § 8.08, Whitaker again argues that the Buyers' contract claim here (like her own previously filed claims in North Carolina) relates to a "Buyer setoff," as that term is used in § 8.08, and therefore that venue is improper in this Court. *See id.* at 1, 9-11. Further, she argues, dismissal is required under the first-filed rule even if venue would otherwise be proper in this District. *See id.* at 1, 12-15. She adds that, in the absence of a binding forum selection clause pointing to New York, this Court lacks personal jurisdiction over her. *Id.* at 1, 15-20. In the alternative, Whitaker submits that this action (including her motion to dismiss) should be stayed "pending the Fourth Circuit's decision" or "pending an adjudication on the merits of the North Carolina Action." *Id.* at 20-22.

On September 21, 2021, Judge Daniels referred this action to me for general pretrial supervision, including hearing and determination of non-dispositive pretrial motions and report and recommendation on dispositive motions. (Dkt. No. 64.) On November 9, 2021, I heard oral argument on Whitaker's motion.

## II.   ANALYSIS

### A.   The Forum Selection Clause

The parties vigorously debate whether the Buyers' breach of contract claim, as set forth in their Amended Complaint here, arises from or relates to a "Buyer setoff" claim, as that term is used in § 8.08 of the SPA. In Whitaker's view, although the Amended Complaint does not use the word "setoff," the claim asserted against her here is "covered by the second part of the forum clause entitling Plaintiff to select North Carolina as the forum," Whitaker Second MTD Mem. at 11, because Buyers have admittedly "withheld, and continue to withhold, the Earnout Payments and have asserted a right to do so by claiming they have incurred losses or damages by the same alleged breaches of representations that are set forth in the Amended Complaint." *Id.* Therefore, in Whitaker's view, the Amended Complaint should be dismissed pursuant to Rule 12(b)(3) for "improper venue." *Id.* at 9.[3]

The Buyers take a different view. Although they agree with Whitaker that the language of § 8.08 is "mandatory," *see* Buyer Opp. Mem. (Dkt. No. 50) at 17, in their view the first half of the clause mandates that Whitaker submit herself to venue in this District, because "neither party

---

[3] In fact, if Whitaker were correct about the application of § 8.08 to this case, her remedy would not lie under Rule 12(b)(3) but rather under the doctrine of *forum non conveniens*, which is codified, when the competing forums are both federal, at 28 U.S.C. § 1404(a). *See Atl. Marine Const. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 60 (2013) (holding that "the appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*" and noting that § 1404 "is merely a codification of the doctrine of *forum non conveniens* for the subset of cases in which the transferee forum is within the federal court system; in such cases, Congress has replaced the traditional remedy of outright dismissal with transfer"); *Fubon Ins. Co. v. OHL Int'l*, 2014 WL 1383604, at *5 (S.D.N.Y. Mar. 31, 2014) ("[A] mandatory forum selection clause should be enforced through a motion to transfer under 28 U.S.C. § 1404(a) if the clause designates a federal forum, and through a motion to dismiss for forum non conveniens (rather than a motion to dismiss pursuant to Rule 12(b)(3)) if the clause designates a nonfederal forum."); *Opera Sols., LLC v. Schwan's Home Serv., Inc.*, 2014 WL 12712364, at *2 (S.D.N.Y. Mar. 23, 2014) (in *Atlantic Marine*, "Rule 12(b)(3) was plainly rejected as the proper mechanism for relief in this context").

11

has asserted any claims 'arising from or relating to a Buyer setoff pursuant to Section 7.08' at *any* time, in *any* forum." *Id.* at 10 (emphases in the original). Rather, the Buyers explain, they "fully performed all obligations under the [SPA] through the date of filing." *Id.* at 17.[4] Moreover, according to the Buyers, Judge Daniels has "already rejected" Whitaker's arguments, *id.* at 14, as evidenced by his comments at the October 13, 2020 oral argument, where he "denied [Whitaker's] motion to dismiss for lack of personal jurisdiction, improper venue, and based on the earlier-filed North Carolina Action." *Id.* at 13.[5]

### B.   The First-Filed Rule

The parties also disagree concerning the application of the first-filed rule, including its application where – as here – the claim in the second-filed action is so closely related to the first-filed claim as to constitute a compulsory counterclaim within the meaning of Rule 13(a). The rule, which is founded upon principles of "judicial administration and conservation of resources by avoiding duplicative litigation and honoring the plaintiff's choice of forum," *Empls. Ins. of Wausau v. Fox Entm't Group, Inc.*, 522 F.3d 271, 275 (2d Cir. 2008) (internal quotation marks

---

[4] The Buyers' narrative omits the fact that, on "the date of filing," they advised Whitaker that they were terminating the SPA and thereafter refused to make all or any part of either Earnout payment. *See* Am. Compl. ¶¶ 153, 157; Tr. at 26:16-25 (asserting that the Buyers continued to "make the interest payments in error for another two months," but have since "asked for those payments to be returned").

[5] This is inaccurate. While at times during the October 13, 2020 argument Judge Daniels expressed skepticism concerning Whitaker's application of the forum selection clause to the claims asserted here, he carefully refrained from reaching the merits of that question, precisely because the issue was already pending before the MDNC, which would decide it first. *See* Tr. at 14:13-16 ("[W]hy is that a decision for me to make when it is already an issue before the North Carolina court[?]"). Thus, Judge Daniels denied the Buyers' "procedural" motions "without prejudice," noting that the MDNC was "in the process of making the decision" (at the time of the argument, Magistrate Judge Webster had issued a recommendation but Judge Tilley had not yet ruled on the pending motions) and anticipating that this Court would "respect that decision when it comes down." *Id.* at 83:11-16. Moreover, as Whitaker correctly notes in her reply brief, the MDNC decision has now "come down," which "changes the procedural posture of this motion[.]" Whitaker Reply Mem. (Dkt. No. 57) at 2.

omitted), teaches that "[w]here there are two competing lawsuits," both pending in federal courts, "the first suit should have priority, absent [a] showing of balance of convenience . . . or . . . special circumstances . . . giving priority to the second.'" *First City Nat'l Bank & Tr. Co. v. Simmons*, 878 F.2d 76, 79 (2d Cir. 1989) (quoting *Motion Picture Lab. Technicians Loc. 780 v. McGregor & Werner, Inc.,* 804 F.2d 16, 19 (2d Cir. 1986) (cleaned up).[6] The rule is "well-settled," *id.*, and the "special circumstances" in which a district court may appropriately favor the second-filed case are "quite rare." *Empls. Ins. of Wausau*, 522 F.3d at 275-76. One such circumstance "exists where the first-filed lawsuit is an improper anticipatory declaratory judgment action." *Id.* at 275. "Another special circumstance is 'where forum shopping *alone* motivated the choice of the situs for the first suit.'" *Id.* at 276 (emphasis in the original) (quoting *William Gluckin & Co. v. Int'l Playtex Corp.,* 407 F.2d 177, 178 (2d Cir. 1969)).

Where the first-filed rule applies, the court may either "stay or dismiss" the duplicative case. *Tarazi v. Quintessential Biosciences, LLC*, 2015 WL 4010477, at *3 (S.D.N.Y. July 1, 2015) (quoting *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir. 2000)). "[S]imple dismissal of the second suit" is an option, *Curtis*, 226 F.3d at 138-39, but, "'[b]ecause of the obvious difficulties of anticipating the claim or issue-preclusion effects of a case that is still pending, a court faced with a duplicative suit will commonly stay the second suit, dismiss it without

---

[6] "[T]he first-to-file doctrine only applies 'where there is concurrent *federal* litigation, not where a federal court contends with concurrent state litigation.'" *Sunwealth Glob. HK Ltd. v. Pinder Int'l, Inc.*, 2021 WL 1145245, at *5 (S.D.N.Y. Mar. 23, 2021) (emphasis in the original) (quoting *Port Auth. of N.Y. & N.J. v. Kraft Power Corp.*, 2012 WL 832562, at *1 (S.D.N.Y. Mar. 13, 2012) and collecting cases). In this case, although Judge Tilley granted Whitaker's motion to remand the North Carolina Action to the State Court, the case has not been remanded out due to the Buyers' appeal. Thus, the North Carolina Action remains pending in the MDNC and there is "concurrent federal litigation" involving the same parties, the same contract, and the same or similar issues.

prejudice, enjoin the parties from proceeding with it, or," if both are pending in the same district, "consolidate the two actions." *Id*. at 138.

Similarly, "once a court becomes aware that an action on its docket involves a claim that should be a compulsory counterclaim in another pending federal suit," it should "stay its own proceedings" or "dismiss the claim with leave to plead it in the prior action." 6 Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Fed. Prac. and Proc.* § 1418, at 165-67 (3d ed. 2010); *Bezuszka v. L.A. Models, Inc.*, 2006 WL 770526, at *18 (S.D.N.Y. Mar. 24, 2006) ("Because we agree that Miller's claims were compulsory counterclaims in the earlier action, we dismiss them as barred by Rule 13."); *Remsen Partners v. Stephen A. Goldberg Co.*, 1997 U.S. Dist. LEXIS 2115, at *3 (S.D.N.Y. Feb. 28, 1997) ("[A] district court should not hear a claim constituting a compulsory counterclaim in an earlier filed action."). As our Circuit explained in *Adam v. Jacobs*, 950 F.2d 89 (2d Cir. 1991), although "[n]othing in Rule 13 prevents the filing of a duplicative action instead of a compulsory counterclaim . . . [t]he filing of the second action . . . contravenes the purpose of Rule 13." *Id.* at 92-94 (concluding that where the second-filed action, in this District, involved "a compulsory counterclaim that the [first-filed] Michigan action should resolve," the district court "erred by failing to transfer or dismiss" the Southern District of New York action).

Rule 13(a) generally requires a defendant to "state as a counterclaim" any claim that arises out of the same "transaction or occurrence that is the subject matter of the opposing party's claim" and that "does not require adding another party over whom the court cannot acquire jurisdiction." Fed. R. Civ. P. 13(a)(1)(A)-(B). Here, the Buyers' breach of contract claim unquestionably meets this standard. *See Skyline Steel, LLC v. Pilepro, LLC*, 2015 WL 999981, at

14

*5 (S.D.N.Y. Mar. 5, 2015) ("Courts have consistently found that counterclaims based on a contract are compulsory in actions relating to the same contract.").

In their papers opposing Whitaker's motion, the Buyers do not dispute that their claim in this Court constitutes a compulsory counterclaim in the MDNC. Nor do they deny that the balance of convenience favors North Carolina, where KRI does business and where most of the documents and witnesses, including Whitaker herself, may be found. *See* Whitaker Second MTD Mem. at 12-13. Instead, they argue vigorously that notwithstanding Judge Tilley's denial of their transfer motion – which they characterize as an "error," *see* Buyer Opp. Mem. at 13, 18 – the second-filed case should remain in this Court because: (i) the New York forum-selection clause in the first half of SPA § 8.08 is mandatory and therefore trumps the first-filed rule, *see* Buyer Mem. at 19, 22;[7] (ii) the MDNC never obtained "subject matter and personal jurisdiction," *id.* at

---

[7] The case-law on this question is decidedly mixed. The Buyers cite *Dornoch Ltd. ex rel. Underwriting Members of Lloyd's Syndicate 1209 v. PBM Holdings, Inc.*, 666 F. Supp. 2d 366, 370 (S.D.N.Y. 2009) (declining to apply first-filed rule where mandatory forum selection clause pointed to New York and, "in any event, a variety of 'special circumstances' also militate against applying the first-to-file rule in the instant action"), and *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Las Vegas Prof'l Football Ltd. P'ship*, 409 Fed. Appx. 401, 403 (2d Cir. 2010) (affirming conclusion of district court in second-filed action that "the first filed rule did not apply" to petition for arbitration filed in the Southern District of New York where the proper venue for any action involving the arbitrability of the agreement was in New York, "because it is what the parties agreed to"). More recently, however, many courts in this Circuit, "both before and after *Atlantic Marine*, have analyzed forum selection clauses in the traditional first-filed framework and applied the first-filed rule even where it conflicted with a forum selection clause." *Enhancedcare, Inc. v. Attentive Health & Wellness, LLC*, 2021 WL 388763, at *7 (W.D.N.Y. Feb. 4, 2021) (collecting cases); *see also, e.g.*, *U.S. Sec. Holdings, Inc. v. Andrews*, 2021 WL 796687, at *10-11 (S.D.N.Y. Mar. 2, 2021) (declining to "defer[] to the forum-selection clause" where "it makes no sense for this Court to do so" and instead transferring second-filed case to district where first-filed case was pending); *Comcast Corp. v. Rovi Corp.*, 2016 WL 4991625, at *3-4 (S.D.N.Y. Sept. 16, 2016) (rejecting Comcast's contention that "the forum-selection clauses trump the first-to-file rule," and staying second-filed case while the first-filed forum resolved the parties' venue motions); *Impala Warehousing (US) LLC v. Kostmayer Const., LLC*, 2012 WL 6621729, at *2 (S.D.N.Y. Dec. 19, 2012) (existence of a "mandatory, exclusive forum-selection clause" did not constitute a "special circumstance" sufficient to "fix[] venue in the court of the second-filed action").

15

20;[8] (iii) the North Carolina Action is an "improper anticipatory declaratory judgment action" (even though it seeks $4 million in damages for breach of contract), *id.* at 20-21; (iv) the North Carolina Action was "plainly motivated by 'forum shopping' alone," *id.* at 21; and (v) there has been "little progress in the first-filed action," which diminishes the force of the rule. *Id.* at 22.

C.     The Bright-Line Rule

The short answer to each of these points is that they are not for this Court to decide. "Litigants who believe that a forum selection clause governs an action brought in an alternative forum should first seek to resolve the venue issue in the first-filed forum, absent exceptional circumstances," and must live with the result they obtain there. *Comcast Corp.*, 2016 WL 4991625, at *3. Just as the first-filed rule itself guards against "duplicative litigation" that could lead to inconsistent results, *Empls. Ins.*, 522 F. 3d at 275, the rule that "[t]he court before which the first-filed action was brought determines which forum will hear the case," *MSK*, 212 F. Supp. 2d at 267, guards against duplicative venue rulings, from two different courts, "that conflict with one another." *Noble v. U.S. Foods, Inc.*, 2014 WL 6603418, at *3 (S.D.N.Y. Nov. 19, 2014); *see also Pem Am.*, 2003 WL 22383369, at *2 ("In order to avoid conflict and confusion, the courts of this district, guided by Second Circuit case law, have adopted the bright-line rule that the court in which the first action was filed has the right and responsibility to decide whether the first filed rule or an exception thereto applies."). Because it is a "bright-line" rule, it "does not provide for any special exceptions. It is a straight-forward rule to be applied in a rote manner." *Id.*

In applying the bright-line rule, courts in this Circuit routinely stay their own proceedings until the venue issue has been resolved in the first-filed forum. *See Comcast Corp.*, 2016 WL 4991625, at *4 (staying second-filed action in the SDNY pending resolution of "the earlier-filed

---

[8] The basis for this contention is unclear. Whitaker does not contest that subject matter jurisdiction in the federal courts is properly based on diversity.

motions to transfer" pending in the Eastern District of Texas); *This, LLC v. Jaccard Corp.*, 2016 WL 1700379, at *3 (D. Conn. Apr. 26, 2016) (staying second-filed action in the District of Connecticut until the Western District of New York, where the first-filed case was pending, decided "whether the first-filed rule should be followed"); *Noble*, 2014 WL 6603418, at *6 (staying second-filed action in the SDNY pending resolution of a pending motion in the Northern District of Illinois to dismiss or transfer the first-filed action); *Pem Am.*, 2003 WL 22383369, at *3 (staying second-filed action in the SDNY "pending a determination by the Northern District of Illinois as to whether the case should proceed"); *MSK*, 212 F. Supp. 2d at 267-68 (staying second-filed action in the SDNY while District of Kansas "grapple[d]" with the parties' venue motions).

If the venue motions in the first-filed forum have been resolved – in favor of that forum – the appropriate remedy in the second-filed forum is an order transferring the second-filed case to the same forum. *Atl. Marine Const. Co.*, 571 U.S. 49, 60 (2013); *Greyhound Lines, Inc. v. Adirondack Transit Lines, Inc.*, 2016 WL 11483933, at *2 (S.D.N.Y. Oct. 7, 2016) (transferring second-filed action from the SDNY to the Northern District of New York after the Northern District denied Greyhound's motion to transfer that action to the SDNY).

Here, the Buyers appropriately sought "to resolve the venue issue in the first-filed forum," *Comcast Corp.*, 2016 WL 4991625, at *3, by filing a motion in the MDNC to dismiss the North Carolina Action or transfer it to this District. Although Judge Tilley has decided that motion – adversely to the Buyers – his decision was appealed to the Fourth Circuit, where it remains pending and undecided.[9] Moreover, while he clearly ruled that Whitaker was entitled to rely on the Buyer Setoff Carve-out to "trigger jurisdiction in [a] North Carolina state or federal

---

[9] According to the Fourth Circuit's electronic docket, *Whitaker v. Monroe Staffing Services, LLC*, No. 21-1217, is scheduled for oral argument on March 9, 2022.

17

court," *Whitaker v. Monroe Staffing Servs.*, 2021 WL 663716, at *2, and on that basis declined to transfer the South Carolina Action to the SDNY, he did *not* rule that the case should remain in the MDNC. To the contrary: should his ruling be affirmed on appeal in all respects, the South Carolina Action will be remanded to the State Court. *Id.* at *4. There is no mechanism under the Federal Rules for this Court to transfer a case to a first-filed state forum. Moreover, as noted above, the first-filed doctrine does not apply "where a federal court contends with concurrent state litigation." *Sunwealth Glob. HK Ltd.*, 2021 WL 1145245, at *5. In such cases, "the principles of abstention provide the more appropriate avenue" to analyze the question of whether and where the second-filed action should proceed. *Id.* at *6; *see also C Fink Family Tr. ex rel. Landau v. Am. Gen. Life Ins. Co.*, 2011 WL 1453793, at *1 (S.D.N.Y. Apr. 7, 2011) (abstention, as opposed to the first-filed rule, was more appropriate when determining whether to dismiss a federal case in favor of a concurrent state court action). Since the venue issues are not yet wholly resolved in the first-filed forum, the bright-line rule counsels that this action be stayed until such time as they are.

### III. CONCLUSION

For the reasons set forth above, the Buyers' motion (Dkt. No. 43) is GRANTED to the extent that this action is STAYED pending the resolution of the appeal now pending in the United States Court of Appeals for the Fourth Circuit. Within ten days of the Fourth Circuit's decision, the parties shall submit to this Court a joint letter regarding the status of the case.

Dated: New York, New York
March 7, 2022

**SO ORDERED**.

_____
**BARBARA MOSES**
**United States Magistrate Judge**