UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------x
MONROE STAFFING SERVICES, LLC, and :
STAFFING 360 SOLUTIONS, INC.,      :
                                    :
                    Plaintiffs,     :    MEMORANDUM DECISION
                                    :    AND ORDER
           -against-                :
                                    :    20 Civ. 1716 (GBD) (BCM)
PAMELA D. WHITAKER,                 :
                                    :
                    Defendant.      :
------------------------------------x

GEORGE B. DANIELS, United States District Judge:

      Plaintiffs Monroe Staffing Services, LLC, and Staffing 360 Solutions, Inc. (collectively, "Plaintiffs") brought this diversity action against Pamela D. Whitaker ("Defendant") alleging breach of contract arising from Plaintiffs' purchase of Defendant's staffing agency, non-party Key Resources Inc. ("KRI"). (First Am. Compl., ("FAC"), ECF No. 40, ¶¶ 1, 9.) In her answer, Defendant asserted two counterclaims for unfair business practices and breach of contract in violation of N.C. Gen. Stat. § 75-1.1 and N.Y. Gen. Bus. Law ("GBL") § 349(h). (Def.'s Answer, ECF No. 80 at 20, ¶ 1.) Plaintiffs then moved to dismiss Defendant's unfair business practices counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6). (Pls.' Mot., ECF No. 84.)

      Before this Court is Magistrate Judge Barbara C. Moses' Report and Recommendation ("Report"), recommending that this Court grant Plaintiffs' motion to dismiss Defendant's unfair business practices counterclaims. (R. & R., ECF No. 105.) Having reviewed the Report, this Court ADOPTS Magistrate Judge Moses' Report in full. Plaintiffs' motion to dismiss Defendant's unfair business practices counterclaim is GRANTED.

1

## I.   FACTUAL AND PROCEDURAL BACKGROUND

This Court assumes familiarity with the background set forth in the Report and recounts here only those facts necessary for resolution of the issues before it.[1]

Plaintiff Monroe is a Delaware limited liability company and staffing agency with a presence in North Carolina, South Carolina, Connecticut, Massachusetts, Rhode Island, and New Hampshire. (FAC ¶¶ 6, 12.) Monroe's principal place of business is in Connecticut. (Second Am. Compl., ("SAC"), ECF No. 107, ¶ 6.) Monroe's direct parent and sole member is non-party Faro Recruitment America, Inc. ("Faro"). (*Id.*) Faro is a New York corporation whose principal place of business is in New York. (*Id.*) Monroe is a wholly owned subsidiary of Plaintiff Staffing 360, which is a publicly traded Delaware corporation and staffing company whose principal place of business is in New York. (*Id.* ¶¶ 7, 22.)

Defendant Whitaker is a resident of North Carolina who owned a North Carolina employee staffing agency from 1997 to 2018. (Def.'s Answer at 21, ¶¶ 2, 3.)   In August 2018, the parties entered into a share purchase agreement ("SPA"), allowing Plaintiffs to acquire KRI for a total purchase price of $12,163,188. (*See* SPA, ECF No. 1, Ex. A, §§ 1.02, 1.03.) The SPA included both a New York choice-of-law and consent-to-jurisdiction provision. (SPA § 8.08.)

In their Complaint, Plaintiffs allege that Defendant breached her obligations under the SPA, because representations set forth in the SPA "included material misstatements of present facts and/or omitted material facts" regarding KRI's non-compliance with certain I-9 verification requirements for its employees, as required under the Immigration Reform and Control Act of 1986, Pub. L. No. 99-603, 100 Stat. 3359. (FAC ¶¶ 100, 115, 158.)

---

[1] The relevant factual and procedural background is set forth in greater detail in the Report and is incorporated by reference herein.

Defendant's counterclaims relate to Plaintiffs' practices regarding deferred compensation (*i.e.*, earnout) payments. The SPA provided that the $12,163,188 purchase price would be paid to Defendant in three installments: $8,108,794 on the closing date ("Closing Date Payment"), $2,027,198 on the first anniversary of the closing date ("First Year Earnout"), and $2,027,198 on the second anniversary of the closing date ("Second Year Earnout"). (SPA § 1.03; FAC ¶ 53.) Plaintiffs tendered the Closing Date Payment in full after the parties executed the SPA. (FAC ¶ 78.) The First Year Earnout payment was not paid. (*Id.* ¶ 82.) Instead, two weeks after the First Year Earnout payment was due, the parties entered into an Amendment Agreement (*id.* ¶ 81), which delayed the deadline for the First Year Earnout payment, required Monroe to pay interest during the period of delay, and accelerated the deadline for the Second Year Earnout Payment. (FAC, Ex. B ("Am. Ag.").)[2] Defendant alleges that, "days before the First Earnout Payment was expected to be made pursuant to the Amend[ed Agreement]," Plaintiffs contacted her regarding a "pretextual buyer setoff claim." (Def.'s Answer at 25, ¶¶ 28, 30.) Defendant alleges that Plaintiffs "concocted" this claim because they lacked funds necessary to make the First Earnout Payment, and that they are engaged in a "pattern or practice of making payment through a method of deferred compensation or earnouts" and then "reneging on payment . . . [by] fabricating a pretextual reason for nonpayment at the time the deferred compensation or earnouts become due." (*Id.* at 27, ¶¶ 30, 45–46.) Defendant argues that this behavior "amounts to an unfair or deceptive act or practice in or affecting commerce," in violation of N.C. Gen. Stat. § 75-1.1. (*Id.* at 28, ¶ 52.) Defendant further alleges that Plaintiffs' "acts or practices were consumer-oriented, and were deceptive or misleading in a material way, in violation of New York GBL § 349(h)." (*Id.* at 28, ¶ 53.)

---

[2] Section 8.08 of the SPA, the New York forum selection and consent to jurisdiction provision, was incorporated by reference into the Amendment Agreement. (Am. Ag. § 3.)

3

On November 11, 2022, Plaintiffs moved to dismiss Defendant's second counterclaim, arguing that New York law applies given the SPA and the Amended Agreement's New York forum selection clause, and that Defendant has failed to state a claim under New York GBL § 349(h). (Pls.' Mem., ECF No. 85.) On June 9, 2023, Magistrate Judge Moses issued the Report, recommending that Plaintiffs' motion to dismiss Defendant's unfair business practices counterclaim be granted. Magistrate Judge Moses advised the parties that failure to file timely objections to the Report would constitute a waiver of those objections on appeal. (Report at 28.) No party filed objections to the Report.

## II.  LEGAL STANDARDS

### A.  Review of a Magistrate Judge's Report and Recommendation

A reviewing court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). The court must review *de novo* the portions of a magistrate judge's report to which a party properly objects. *Id.* Portions of a magistrate judge's report to which no or "merely perfunctory" objections are made are reviewed for clear error. *See Edwards v. Fischer*, 414 F. Supp. 2d 342, 346–47 (S.D.N.Y. 2006) (citations omitted). The clear error standard also applies if a party's "objections are improper—because they are 'conclusory,' 'general,' or 'simply rehash or reiterate the original briefs to the magistrate judge.'" *Stone v. Comm'r of Soc. Sec.*, No. 17 Civ. 569 (RJS) (KNF), 2018 WL 1581993, at *3 (S.D.N.Y. Mar. 27, 2018) (citation omitted). Clear error is present when "upon review of the entire record, [the court is] 'left with the definite and firm conviction that a mistake has been committed.'" *United States v. Snow*, 462 F.3d 55, 72 (2d Cir. 2006) (citation omitted).

4

### III. THIS COURT MUST APPLY NEW YORK LAW

The parties have invoked this Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1). (FAC ¶ 9; Def.'s Answer at 21, ¶ 6.) Complete diversity exists between the parties, satisfying the requirements of diversity jurisdiction. (*See* SAC ¶¶ 6–8.) "A federal court sitting in diversity . . . must apply the choice of law rules of the forum state." *Rogers v. Grimaldi*, 875 F.2d 994, 1002 (2d Cir. 1989). Where the parties' contract contains a choice-of-law clause, a federal court sitting in diversity determines the scope of that clause "under the same law that governs the clause's validity – the law of the forum." *Fin. One Pub. Co. v. Lehman Bros. Special Fin., Inc.*, 414 F.3d 325, 333 (2d Cir. 2005). To determine whether a choice-of-law clause applies to an extra-contractual dispute, New York courts consider "tort claims [to be] outside the scope of [a] contractual choice-of-law provision" unless the provision is "drafted broadly enough to reach such tort claims." *Id.* at 335. "As a general rule of thumb, provisions applying to disputes 'arising out of' or 'relating to' a contract are capacious enough to reach related tort claims, while provisions stating that a contract will be 'governed by' or 'construed in accordance with' the law of a state are not." *Ramiro Aviles v. S & P Glob., Inc.*, 380 F. Supp. 3d 221, 270–71 (S.D.N.Y. 2019) (quoting *Chigirinskiy v. Panchenkova*, No. 14 Civ. 4410 (JPO), 2015 WL 1454646, at *6 (S.D.N.Y. Mar. 31, 2015)).

The SPA makes clear that this Court must apply New York law. The SPA's choice-of-law clause states that New York law would govern "all matters arising out of or relating to" the Agreements. (SPA § 8.08.) This "expansive" language is "capacious enough" to reach Defendant's unfair business practices counterclaim. *Frazer Exton Dev. L.P. v. Kemper Envtl., Ltd.*, No. 03 Civ. 0637 (HB), 2004 WL 1752580, at *10 (S.D.N.Y. July 29, 2004); *Ramiro Aviles*, 380 F. Supp. 3d at 270–71. As the Report correctly determined, the SPA's expansive language

indicates that the parties intended to "achieve broad coverage" and "avoid a conflict-of-laws analysis and its associated time and expense[.]" (Report at 21) (quoting *Frazer Exton Dev.*, 2004 WL 1752580, at *10 and *Ministers & Missionaries Benefit Bd. v. Snow*, 45 N.E.3d 917, 923 (2015)). Further, Defendant's unfair business practices counterclaim directly implicates the SPA, the Amended Agreement, and the representations therein. The claims that Plaintiffs purportedly "manufactured" in order to "acquire KRI at a significant discount" were claims for breach of the representations in the SPA. (Def.'s Mem. at 9; Def.'s Answer at 28, ¶ 51.) Defendant's unfair business practices counterclaim is interwoven with Plaintiffs' entry into, and purported breach of the representations contained in the SPA. Thus, this Court must apply New York law. *See Bausch & Lomb, Inc. v. Mimetogen Pharm., Inc.*, No. 14 Civ. 6640 (FPG), 2016 WL 2622013, at *8 (W.D.N.Y. May 5, 2016).

## IV. PLAINTIFFS' MOTION TO DISMISS DEFENDANT'S UNFAIR BUSINESS PRACTICES COUNTERCLAIM IS GRANTED

Defendant alleges that Plaintiffs violated New York's unfair business practices statute, GBL § 349, by engaging in a "practice of making payment through a method of deferred compensation or earnouts," and then "reneging on payment . . . [by] fabricating a pretextual reason for nonpayment" when the earnouts became due. (Def.'s Answer at 27, ¶¶ 45–46.) GBL § 349(a) provides that "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are [] declared unlawful." "To state a claim under § 349, a plaintiff must allege: (1) the act or practice was consumer-oriented; (2) the act or practice was misleading in a material respect; and (3) the plaintiff was injured as a result." *Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009); *Fritz v. Resurgent Cap. Servs., LP*, 955 F. Supp. 2d 163, 173 (E.D.N.Y. 2013). "The typical violation contemplated by the statute involves an individual consumer who falls victim to misrepresentations made by a seller of consumer goods

6

usually by way of false and misleading advertising." *Teller v. Bill Hayes, Ltd.*, 630 N.Y.S.2d 769, 773 (1995) (quoting *Genesco Entm't., Div. Lymutt Indus., Inc. v. Koch*, 593 F. Supp. 743, 751 (S.D.N.Y. 1984)).

Defendant has not adequately pled a violation of GBL § 349(h) because Plaintiffs alleged business practices do not constitute "consumer-oriented conduct" which is required to "have a broader impact on consumers at large[.]" *Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 744 (1995). New York law makes clear that "private contractual disputes which are unique to the parties do not fall within the ambit of the statute." *Yellow Book Sales & Distribution Co. v. Hillside Van lines, Inc.*, 950 N.Y.S.2d 151, 154 (2012). Defendant has not plausibly alleged that Plaintiffs' conduct has the potential to impact consumers at large. Further, GBL § 349 does not cover complex business transactions negotiated between sophisticated parties, who were represented by counsel. "Courts have repeatedly dismissed GBL § 349 claims based on transactions between 'relatively sophisticated entities with equal bargaining power.'" *Warren v. Mariner Fin., LLC*, No. 16 Civ. 221 (LJV), 2020 WL 4676658, at *5 (W.D.N.Y. Aug. 12, 2020), *aff'd*, No. 20-4193, 2021 WL 5232253 (2d Cir. Nov. 10, 2021) (quoting *Exxonmobil Inter-Am., Inc. v. Advanced Info. Eng'g Servs., Inc.*, 328 F. Supp. 2d 443, 449 (S.D.N.Y. 2004)). As the Report correctly determined, Defendant's unfair business practices counterclaim "is essentially a 'private' contract dispute" that is "unique to these parties, not conduct which affects the consuming public at large," *New York Univ. v. Cont'l Ins. Co.*, 662 N.E.2d 763, 771 (1995). Defendant's unfair business practices counterclaim is therefore dismissed.

## V. CONCLUSION

Magistrate Judge Moses' Report is ADOPTED in full. Plaintiffs' motion to dismiss Defendant's unfair business practices counterclaim is GRANTED. The Clerk of Court is directed to close the open motion at ECF No. 84 accordingly.

Dated: June 29, 2023
    New York, New York

SO ORDERED.

*George B. Daniels*
GEORGE B. DANIELS
United States District Judge